# CHARLESTON.

ROANOKE GROCERY & MILLING CO. *v.* WATKINS *et al.*

Submitted January 22, 1896—Decided March 28, 1896.

1. NEGOTIABLE INSTRUMENTS—INDORSEMENT BEFORE DELIVERY
   —PAROL EVIDENCE.

   Where a negotiable promissory note, made payable to a partic-
   ular person or order, is first indorsed by a third person, and then
   delivered to the payee, such third person is held to be an original
   promisor, guarantor, or indorser, according to the nature of the
   transaction and the understanding of the parties at the time; and
   this may be shown by parol proof.

2. NEGOTIABLE INSTRUMENTS—UNDERSTANDING OF PARTIES—OR-
   IGINAL PROMISOR.

   If it be shown that the understanding between such third per-
   son and the payee at the time of the transaction was that such
   third person should be bound only collaterally, in such case the
   payee will not have the right to hold him bound as an original
   promisor.

3. NEGOTIABLE INSTRUMENTS—JOINT PROMISSOR—INSTRUCTIONS.

   Defendant Jones was sued only as a joint promisor, and pleaded
   the general issue *nil debet.* The court was asked on his behalf to
   give the following instruction : "Defendant's Instruction No. 6.
   The court instructs the jury that if they believe from the evidence
   in this case that H. C. Jones indorsed his name on the back of
   the note sued on in this case as indorser, and not as joint maker
   thereof, and that at the time the said note was delivered to the
   plaintiff it knew the said Jones indorsed the said note as an in-
   dorser thereon, and not as a joint promisor, and that the said
   plaintiff had said note regularly protested, and had notice sent
   to the said Jones, as indorser, of such protest, then the jury may
   consider said facts along with the other evidence in the case, and
   if therefrom they believe from the evidence that the said Jones
   was an indorser on the note sued on, and not a joint maker or
   promisor, they should find for the defendant"—which, being ob-
   jected to by plaintiff, was refused by the court. Held, this was
   error to defendant's prejudice, as the evidence tended to prove
   the facts upon which it was based.

JOHNSTON & HALE for plaintiff in error, cited Barton, Law
Prac. 143; 22 How. 341; 59 N. Y. 479; 19 N. Y. 227; 50 N.
Y. 71; 56 Ind. 465; 48 Ind. 244; 4 Ind. 460; 35 N. J. Law, 571;

57 Tenn. 421;  35 Md. 262;  68 Pa. St. 243;  10 W. Va. 470;
9 W. Va. 415.

Holt, President :

Upon a writ of error to a judgment rendered by the Cir-
cuit Court of Mercer county on the 21st of May, 1895, for
eight hundred and forty two dollars and seventy eight cents
in favor of the Roanoke, *etc.*, Company against defendant
H. C. Jones, who alone appeals.   The suit was an action
of debt, containing two counts, upon the following negoti-
able note, irregularly indorsed by  W. P. Phillips (dead at
the time of the suit) and defendant H. C. Jones, which note
reads as follows: "$745.83.   P. O. Bluefield, Dec. 28, 1892.
Seventy eight days after date we promise to pay to the or-
der of Roanoke Grocery and  Milling Company seven hun-
dred and forty five dollars and 83-100.   Negotiable,
and  payable at First National Bank  of Bluefield, W.
Va.   Homestead and all other exemptions waived by the
maker and each indorser.   Value received.   Watkins &
Surface.   No. 2,787.   16-19 March.   Due 16-19 March."
Indorsement on back:  "W. P. Phillips.   H. C. Jones."
"Protested for nonpayment, March 18, '93.   Geo. C. Pol-
lock, N. P."   The process was duly served on the three
defendants and returned, and the conditional judgment
and judgment by default were duly entered at rules, and
the case properly entered on the court docket.   On the
15th day of February, 1895, defendant Jones appeared by
his attorney, and demurred generally to plaintiff's declara-
tion, and to each count, in which the plaintiff joined, and
the court having overruled the same, and defendants Wat-
kins & Surface continuing in the default, the court render-
ed judgment against them.   Defendant Jones entered the
plea of *nil debet*, which in debt on simple contract is still,
with us, the general issue, putting the plaintiff to the proof
of every material averment, where some statute does not
otherwise provide.   See Code, c. 125, ss. 40, 41; 5 Rob. Prac.
246-248,

And all the facts alleged must occur to prove the defend-
ant indebted to the plaintiff.   As to the demurrer, the
plaintiff gave notice to the defendant that it elected to treat
the defendant and all the other parties to the note sued on

as joint promisors, and not to treat defendant Jones as indorser or guarantor, and that it relied upon the second count alone; therefore, at the instance of the plaintiff, the first count is to be disregarded. See Code, c. 131, s. 13.

In the second count it is averred that the said W. P. Phillips is "since deceased," and, reading that for the present in aid of the second count, it shows why such joint promisor is not also sued. See 1 Bart. Law Prac. 144. That objection being removed, the count is good against the three survivors as joint promisors. I think it is to be regretted that the doctrine has not been laid down in this state that such irregular indorser who puts his name on the back of a negotiable note before it is delivered to the payee or indorsed by him should be presumed to be a first indorser to the extent of being entitled to notice of non-payment, *etc.* See 1 Daniel, Neg. Inst. § 714; *Pool* v. *Anderson*, 116 Ind. 88 (18 N. E. 445). It is desirable that such paper should carry its history on its face, and should be *prima facie* presumed to be what it appears to be, *viz.* an indorsement so far as the rights of a regular indorser are concerned. In this state I understand the doctrine to be that when a negotiable promissory note, payable to a particular person or order, is first indorsed by a third person, and then delivered to the payee, such irregular indorser is *prima facie* an original promisor or guarantor, as the payee may elect. But the true nature of the transaction and the understanding of the parties at the time may be shown by parol proof, and such proof may destroy the right of election of the payee, and such irregular indorser may be held liable only as an original promisor or as a guarantor or as an indorser, according to the nature of the transaction and the understanding of the parties to it. If it is shown that such third person signed his name on the back of the note at the time it was made as surety for the maker, and for his accommodation, to give him credit with the payee, such proof does not alter the right of the payee to hold him bound as an original promisor or as guarantor or as an indorser, as he may elect. If it be shown that the understanding between such third person and the payee at the time of the transaction was that such third person should be bound

only collaterally, such understanding will destroy the right which the payee would otherwise have had of electing to hold him bound as original promisor. *Burton* v. *Hansford*, 10 W. Va. 470-481. On the other hand, if his indorsement was subsequent to the making of the note, and he put his name thereon at the request of the maker, pursuant to a contract with the payee, for further indulgence or forbearance, he can only be held as a guarantor. *Rey* v. *Simpson*, 22 How. 341. See 2 Rob. Prac. (New) p. 287 *et seq.*

The facts, as they appear from the testimony of plaintiff's witnesses, are as follows: The consideration of the note was an account held by the Roanoke Grocery & Milling Company against Watkins & Surface for goods sold them, and they sent out their agent from Roanoke, where plaintiff did business, to Bluefield, where defendants lived and did business, with instructions to get the money on the account or get it secured. Watkins & Surface executed the note in question with the intention of securing it by deed of trust on certain real estate in Bluefield, but when they were informed that the giving of the deed of trust would prevent them from borrowing money on the property from the loan and trust company, they declined to give the deed of trust, but proposed to get indorsers on the note. To this plaintiff's agent acceded, and agreed to give seventy eight days' time if they would get the note endorsed by those whom Mr. Mann, the bank cashier, approved of. It was then indorsed by Phillips and defendant Jones, who were approved as good and sufficient, and the transaction was thus closed. This statement of the transaction is the most favorable to plaintiff's case that can in any way be made out by the testimony. This shows that the indorsement was subsequent to the making of the note, or, if not subsequent, it was then indorsed, not to give Watkins & Surface credit with the payee, the Roanoke Company, but in pursuance of a contemporaneous agreement with the payee that such indorsers should be thus collaterally bound in consideration of further forbearance in the time of payment of a debt before that time contracted, and then past due. Under such circumstances the plaintiff had no right

to elect to hold defendant Jones as an original joint promisor.    Under our cases, if the indorsement was subsequent to the making and delivery of the note, Phillips and defendant Jones were only guarantors; but if the indorsement was thus made after the note was returned for that purpose, and before it was accepted, then they were indorsers, entitled to notice of non-payment, *etc.*    And so the plaintiffs, it may be out of abundant caution, treated them, for they had the note protested, and notice thereof given to the indorsers.    Each party, at certain stages of the trial, moved the court to exclude the evidence from the jury, but, when their motions were overruled by the court, destroyed its effect as a demurrer to the evidence by introducing further evidence, so that defendant's exception to that ruling, having been thus waived, can not be considered.    It would be a most unfair proceeding to give him the benefit of such a motion when he is unwilling to risk his own exception to the ruling of the court, but goes on with his evidence, which may better his own case, and may also supply the deficiency or cure the defect in the testimony introduced by his adversary.

It was shown in evidence that defendant Jones indorsed the note on the condition that it was not to take effect until the makers, Watkins & Surface, had procured John L. Stafford to sign it as first indorser.    But knowledge of this was not brought home to Jameson, the agent of plaintiff who had the matter in hand, and there is nothing on the face of the paper to give or lead to a knowledge of such fact.    It is true, the note was handed by Jameson to Watkins & Surface with the statement that Stafford, Phillips, and Jones would be taken as indorsers, but when it was returned to him with the indorsement of only Phillips and Jones their indorsement was approved by Mr. Mann, the cashier, and the note was accepted as good.    Under such circumstances the evidence was properly excluded, there being no evidence which tended to bring to the knowledge of plaintiff's agent such conditional indorsement by defendant Jones.

The following three instructions were given the jury at the instance of plaintiff and against the objection of de-

fendant Jones: Plaintiff's instruction No. 1: "The court instructs the jury that when H. C. Jones put his name upon the back of the note sued on in this case he thereby intended to become bound for its payment in some form; and if the jury believes that said note was delivered to the plaintiff before maturity, in its present form, in the absence of proof of an understanding, known to the plaintiff or its agent, that said Jones was to be bound in any particular manner, then the plaintiff has the right to charge him as joint promisor or maker along with the other parties whose names appear upon the said note, and they must find for the plaintiff." Plaintiff's instruction No. 2: "The court instructs the jury that the burden of proof is upon the defendant H. C. Jones to prove that when he put his name on the back of the note in suit, before its delivery to the plaintiff, he intended to become bound only as guarantor or indorser or otherwise than as joint promisor or maker along with the other parties to said note, and that he must show that such understanding was had with the plaintiff." Plaintiff's instruction No. 3: "The court instructs the jury that if they believe from the evidence that the defendant H. C. Jones is bound as joint promisor or maker of the note sued upon, then no notice of protest was necessary to be given to the said Jones." No exception is taken, or can be properly taken, to instruction No. 3, and taking for granted that plaintiff had no knowledge or notice of defendant Jones' conditional indorsement, I can see no objection to instructions Nos. 1 and 2. The evidence of defendant Watkins is that this note was first executed without indorsers, and then brought back by plaintiff's agent, Jameson, for the purpose of getting indorsers, and that when it was brought back these satisfactory indorsments were procured. That, under our cases, would make defendant Jones a guarantor without any right on the part of plaintiff to elect to hold him bound as an original promisor. The inferences that may be drawn from the conceded circumstances attending the transaction do tend to confirm the testimony of defendant Watkins. Yet witness J. A. Jameson says that this note, as it now appears, was the only one ever sent into the plaintiff's place of business; at least the only note he ever

saw in reference to this matter. T. E. Jameson, who conducted and managed the whole affair as far as plaintiff had anything to do with it, says that it was all one transaction, with no agreement, contemporaneous or subsequent, that he had any knowledge of that related to the note other than what it now shows for itself.

The defendant Jones offered six several instructions. Each and all were refused, to which ruling defendant Jones excepted, and assigns error. No. 1 is as follows: Defendant's instruction No. 1: "The court instructs the jury that if they believe from the evidence in this case that the defendant H. C. Jones indorsed his n ime on the back of the note sued on in this case, after it was made, for the purpose of procuring an extension of time for Watkins & Surface on a debt then due, and which they at the time owed to the plaintiff in this case, then the said H. C. Jones became a guarantor, and the plaintiff can not recover in this case." The court called the attention of counsel to the fact that the word "made," used in the instruction, was, under the evidence in the case, ambiguous, and did not show whether it was meant in the sense of "delivered" or simply "prepared ready for delivery;" but no modification was asked or made, and the instruction was properly refused. Defendant's instructions Nos. 2 and 3 cover the same phase of the case. In fact all of defendant's instructions are based on the theory that defendant Jones was indorser or guarantor. No. 6 is as follows: Defendant's instruction No. 6: "The court instructs the jury that if they believe from the evidence in this case that H. C. Jones indorsed his name on the back of the note sued on in this case as indorser, and not as joint maker thereof, and that at the time said note was delivered to the plaintiff it knew the said Jones indorsed the said note as an indorser thereon, and not as a joint promisor, and that the said plaintiff had said note regularly protested, and had notice sent to the said Jones, as indorser of such protest, then the jury may consider said facts along with the other evidence in the case, and if therefrom they believe from the evidence that the said Jones was an indorser on the note sued on, and not a joint maker or promisor, they should find for the defendant." This in-

struction should have been given, as it is based upon the hypothesis that, *inter alia*, the understanding between defendant Jones, the irregular indorser, and plaintiff, the payee in the note, was that he should be bound only collaterally. I have already pointed out that the direct evidence of witness Watkins, together with certain inferences that may not unnaturally be drawn from the whole transaction, tend at least in some substantial degree to prove such fact, and the others on which the instruction was based, and it related to what each party treated—I think properly—as the turning point in the case.

The last assignment made by defendant Jones is that the court erred in entering two judgments in the case—one against Watkins & Surface, the principal debtors, who had no defense and made default; and the one here complained of against Jones, the defendant below, and plaintiff in error—and *Snyder* v. *Snyder*, 9 W. Va. 415, is cited. See full discussion of the subject in *Hoffman* v. *Bircher*, 22 W. Va. 537; 1 Bart. Law Prac. 143 *et seq.*, and cases cited. Taking for granted, for the purpose of considering it, that there is no error in the case unless this be one, it would seem to me to be quite a hindrance to the practical administration of justice if plaintiff could not proceed to judgment, as he did in this case, until judgments could be obtained against them all, as to whom plaintiff should, on trial, be shown not to be barred from right of recovery by any defense peculiar to one or more of the defendants in such action founded on contract. The principal debtors, Watkins & Surface, are in financial embarrassment; the debt is just; they have no defense; and, as to them, plaintiff's judgment should not be delayed. They do not appear, but let judgment be rendered by the court on their default. The irregular indorser, Jones, has a defense personal and peculiar to himself; that is, he put his name on the back of the note with the understanding, known to the agent of payee having the matter in hand, that he was not to be bound as an original promisor, but only by an agreement, whether subsequent or contemporaneous, collateral to the making and delivery of the note, that, if the payee would give the makers an indulgence of seventy eight days, he would put his name

on the back as irregular indorser or guarantor. It is a general rule, sanctioned in Virginia for a long time by many decisions, that in a joint action founded upon a joint obligation or on a joint and several obligation there must be a joint judgment against all the (living) parties, or no judgment at all. But it is not a universal rule. Where a defendant pleads matter which goes to his personal discharge, such as bankruptcy, infancy, or any matter that does not go to the nature of the writ, or pleads or gives in evidence a matter which is a bar to the action as against him only, and of which the others could not take advantage, judgment may be given for such defendant and against the rest. *Snyder* v. *Snyder*, 9 W. Va. 415, 419; *Hoffman* v. *Bircher*, 22 W. Va. 537. Such, I take it, was the rule at common-law. See *Speed* v. *Hann*, 15 Am. Dec. 82; 1 Freem. Judgm. (4th Ed.) § 231. See 4 Minor, Inst. pt. 1, pp. 689, 967. We have three statutes on the subject. "Where in an action or suit against two or more defendants the process is served upon part of them, the plaintiff may proceed to judgment as to any so served, and either discontinue it as to the others, or from time to time as the process is served as to such others, proceed to judgment as to them until judgments be obtained against all." Code 1891, p. 809, c. 125, s. 52. "In an action founded on contract against two or more defendants, although the plaintiff may be barred as to one or more of them, yet he may have judgment against any other or others of the defendants against whom he would have been entitled to recover if he had sued them only on the contract alleged in the declaration." Code, c. 131, s. 19. And, as showing the spirit of these acts, section 13 of chapter 99 provides that the representative of a joint obligor may be charged as if the obligation were several as well as joint. So, also, sections 17, 18, and 19 of chapter 125 of the Code have an important bearing in showing at least the legislative intent to do away with the common-law hardships. The common-law test seems to be the validity of a plea in abatement for nonjoinder. See 1 Freem. Judgm. § 231. If the contention of defendant Jones had been well founded that his obligation was one of guaranty only, and therefore collateral to the note, it would

not be merged in the judgment taken by default against the makers of the note. 1 Freem. Judgm. § 222. In such cases the right exists to prosecute both contracts or obligations to judgment, and the mere recovery on one does not merge the other. *Lord* v. *Bigelow,* 124 Mass. 185. If defendant Jones had, by the matter given in evidence under the general issue, which went to his personal discharge, succeeded in making it a bar as to himself, then the plaintiff's judgment against defendants Watkins & Surface would be valid under section 19 of chapter 131 of the Code. But as, on the other hand, he failed to make good such defense in bar, which was personal to himself, why would not he who, by his conduct and false plea, brought about the two several judgments, be estopped from complaining of it? It would seem, however, from our authorities cited, that there ought not to have been two judgments. But no opinion is intended to be expressed on this point, for the judgment and verdict complained of must, for the reasons already given, be set aside, and a new trial be awarded.