# CHARLESTON.

## PARSONS v. HARROLD et al.

### Submitted January 19, 1899—Decided March 25, 1899.

1. SURETYSHIP—*Release—Seal—Equity.*
   The defense by a surety that he has been discharged by indulgence to the principal, or by a surrender of a security for the debt, may be made in a court of law, where the debt is not under seal, but where it is under seal such defense can be made only in equity. (p. 123).

2. SURETYSHIP—*Extension of Debt—Consideration—Discharge.*
   Actual payment of usurious or legal interest in advance is a sufficient consideration to make valid a contract to extend payment of a debt, so as to discharge a surety, but a mere naked unexecuted agreement to pay such interest will not discharge a surety. (p. 123).

3. SURETYSHIP—*Release.*
   To release a surety by indulgence of the principal or by surrender of a security for the debt, the creditor must know, when he agrees to indulge or surrenders the security, that the party is a surety. (p. 124).

4. NOTE—*Makers—Suretyship.*
   When two persons make a note the *prima facie* presumption is that they are both principals, and the payee may so treat them, unless the note, or the parties, or the circumstances, plainly inform the payee that one is a surety. The surety may so notify the payee, and then the payee must have regard to his rights as such. (p. 125).

5. SURETYSHIP - *Release—Indulgence.*
   If indulgence be granted a principal debtor, with consent of the surety, or if with knowledge of past agreement to indulge, the surety promises payment, such indulgence will not release him. (p. 126).

Error to Circuit Court, Cabell County.

Action by Warren J. Parsons against C. B. Harrold and others. Judgment for plaintiff, and defendant T. W. Peyton and others bring error.

*Affirmed.*

Campbell, Holt & Campbell, for plaintiffs in error.

Williams, Scott & Lovett, for defendant in error.

Brannon, Judge:

Parsons brought an action before a justice against Harrold, McCullough, and Peyton upon a promissory note in favor of Parsons, signed ʿon its face by Harrold, upon which Peyton and McCullough indorsed their names before its delivery, thus giving Parsons right to treat them all as joint makers. The case went by appeal to the circuit court of Cabell County, and resulted in a judgment against all the defendants, and Peyton and McCullough bring the case to this Court.

The answer filed before the justice set up the defense— First, that Harrold was principal debtor, and Peyton and McCullough only sureties, and that Parsons, without their consent, had extended indulgence to Harold; and, second, that Parsons had waived a deed of trust upon property given to secure the note, by agreeing to allow a deed of trust to be made to a building association, and subordinating to it, in point of priority, the trust given for the note. As this case is based on an unsealed instrument, the defenses specified can be made in a court of law, as shown in *Glenn* v. *Morgan*, 23 W. Va. 467, by Judge Snyder. If it were a sealed instrument, the defense could not be made at law. *Bank* v. *Parsons*, 42 W. Va. 137, (24 S. E. 554 Syl., point 9). After maturity of the note, the creditor agreed with Harrold to give one year's indulgence in consideration of payment of 10 per cent. interest in advance, which was paid; and at the close of the second year Parsons agreed with Harrold for another year's indulgence on the same terms, paying, however, only a little of the interest,—not as much as one year's lawful interest. It seems to be law that payment actually made in advance of usurious interest, under a contract for its payment. will discharge the surety, if he does not consent to it; but a mere naked, unexecuted promise to pay such usurious interest would not do so. 2 Brandt, Sur. § 356; 5 Rob. Prac. 787. So, the actual payment of one year's interest, though usury, would constitute ground for the release of the surety. As to the payment of less than legal interest in

advance for the second year, as the law is that payment in advance of lawful interest is a valid contract, and, if executed, binds the creditor from suing, that would release the surety; and, as the payment of a part of a year's lawful interest in advance goes to tie the hands of the creditor from suit up to the period to which such payment discharges interest, that partial payment would release such surety. *Glenn* v. *Morgan*, 23 W. Va. 467, 470; 5 Rob. Prac. 787. Therefore, as the evidence shows that Peyton and McCullough were sureties, the facts just stated would exonerate them from liability, if it were fixed upon Parsons that he knew that they were sureties; for, to make the defense of indulgence to the principal available for the release of a surety, it must appear that the creditor knows that the surety is only surety when he makes the contract of indulgence. Per JUDGE SNYDER in *Glenn* v. *Morgan*, *supra*; per Justice Gray in *Insurance Co.* v. *Honford*, 143 U. S. 191, (12 Sup. Ct. 437); 2 Brandt, Sur. § 375; 2 Daniel, Neg. Inst. § 1335; *Long* v. *Campbell*, 37 W. Va. 666, (17 S. E. 197). But the question whether Parsons knew that Peyton and McCullough were sureties was one of fact before the jury upon evidence, and, to discharge them by reason of this indulgence, we would have to oppose and reverse the finding of the jury. Therefore we cannot allow the defense of indulgence.

Next, as to the defense of the waiver of the deed of trust. Because of the verdict of the jury finding that Parsons did not know of the suretyship, we have to deny this defense to Peyton. It is true that the release by a creditor of a lien or hold upon property of a principal debtor, constituting a substantial security for the debt without the consent of the surety, releases the surety. *Bank* v. *Parsons*, 42 W. Va. 137 (24 S. E. 554 Syl. point 8); *Bank* v. *Parsons*, 45 W. Va. 688 (32 S. E. 271 Syl. point 3). But Parsons not knowing of the suretyship that defense does not apply any more than does the defense of indulgence. He had the right to regard them simply as joint debtors and while the express release by contract of one joint debtor is the release of all, this is not so where the release operates upon principles of equity from indulgence to the principal debtor or the surrender of a security for the debt. In this

connection I must refer the position taken in the able brief
of counsel for Peyton and McCullough based on their con-
struction of the case of *Good* v. *Martin*, 95 U. S. 90, in which
an instruction was held proper that if "defendant wrote .
his name upon the back of the note before delivery to the
payee, and that he did not then make any statement of his
intention in so doing, he is presumed to have done so as
the surety of the makers, and for their accommodation,
to give them credit with the payee, and is liable for the
payment of the note." From this counsel argue that if
two facts appear, namely, that the defendant wrote his
name on the back of the note before delivery to the payee,
and made no statement at the time of the delivery, the pre-
sumption is that he was surety. The Court did not mean
that. The opinion does not say so. It meant that there
is a presumption, in case of silence, that he was a joint
promisor, either as principal or surety, as distinguished
from guarantor or indorser. It did not mean that as to
the creditor signature and silence created the presumption
that a party was surety and not principal. That would fly
in the fact of a volume of authority; for when, as between
payee and maker, it comes to the question whether one
promisor is surety for another, authorities generally show
that, when parties put their names on the face of a note, or
on its back, not regularly as endorsers, before delivery,
they are to be taken simply as joint promisors, and not
any of them as sureties, whatever may be the understand-
ing between themselves, unless by the addition of the word
"Surety" to a name, or otherwise, the paper tells the cred-
itor that one is only surety, or he is expressly informed of
it, or it is clearly shown by the circumstances. The great
question is, not whether *prima facie* the parties are all
principals, but whether any oral evidence can be received
to show that one of the parties was but a surety; but,
though conflicting, the weight of authority is that such
evidence is admissable. 24 Am. & Eng. Enc. Law, 723;
*Creigh* v. *Hedrick*, 5 W. Va. 140; *Long* v. *Campbell*, 37 W.
Va. 665, (17 S. E. 197); 2 Daniel, Neg. Inst. § 1332-1338; 5
Rob. Prac. 773; 1 Brandt, Sur. § 29. The case of *Good* v.
*Martin*, *supra*, involved the question whether, as between
creditors and debtors, the debtors were to be treated as

original makers or indorsers, while we have the question whether, as to the creditor, a party is a principal or surety. I think the cases of *Burton* v. *Hansford*, 10 W. Va. 470, and *Long* v. *Campbell*, 37 W. Va., 665, (17 S. E. 197) and *Milling Co.* v. *Watkins*, 41 W. Va. 787, (24 S. E., 612) though not just on this point, contain principles sustaining the views as above expressed.

Next, as to McCullough. The same may be said as to ignorance of Parsons of suretyship as is said above as to Peyton. In fact, Parsons gave the check payable to McCullough, and delivered it to him And, furthermore, there was evidence before the jury that McCullough knew of the first year's extension, and said to Parsons, "Let it run another year longer." There was evidence that he consented to the waiver of the deed of trust lien. While there· is not evidence that he explicitly agreed to the second year's indulgence, yet he was informed of it by Parsons telling him that McCullough had not paid the interest for that year, and said that he would see Harrold about it. He did not object, and, though one·extension consented to does not warrant a second without the surety's consent, yet if the party agrees to pay, knowing of such extension, that waives the release which would otherwise flow from the extension. 24 Am. & Eng. Enc. Law, 832. Is not the statement by McCullough, when told of this second year's extension, that he would see Harrold about paying the interest equivalent to an agreement or assent to continue bound?

I should add that one hundred dollars of the money raised by the mortgage, in favor of which the waiver was made, was applied on this debt, which was a consideration for McCoullough's consent to it. It is well settled that, where a release of lien is made for the betterment of the debt, it does not discharge the surety. Of course, that one hundred dollars did not injure the surety, and as, crediting that one hundred dollars, there would be a difference of only two hundred and seventy dollars between the old prior mortgage and the second one, in favor of which the waiver was made, it would not discharge the debt, but would only go to its discharge *pro tanto*, even if available as a defense. Brandt, Sur. § 429; 24 Am. & Eng. Enc.

Law, 853.   But I do not think, for reasons above given, that defense available.   Furthermore, it does not appear that, after payment of that mortgage, the property will not be sufficient to pay this debt.   The law is settled that, to discharge a surety by the surrender or waiver of a lien, the surety must be actually injured.

The court and jury below have decided that this just debt shall be paid by all those who contracted to pay it, and we do not see any adequate reason why we should reverse this decision, and cause the loss of an honest debt to its owner.   Those parties agreed to pay it, and, if they demand a discharge under the law, they should make out a very clear case.

The plaintiffs in error complain of an instruction given on the motion of the plaintiff, Parsons, to the effect that if, when the note was delivered to Parsons, it was payable to him, and was signed by Harrold, and had written on the back the names of Peyton and McCullough, then Parsons was entitled to hold them as joint makers; and if Peyton and McCullough signed their names on the back of the note at the time it was made as security for the maker, and for his accommodation, to give him credit with the payee such proof did not alter the right of the payee to hold them bound as original promisors or guarantors or indorsers, as he might elect.   It is said that this instruction is misleading, and not relevant to the case, or, at least, not meeting it, and that it should have been modified so as to inform the jury what they should do if they found that Parsons had given extensions or released a lien without the consent of the sureties.   Clearly, it is relevant and pertinent to the case, because it tells the jury what is the legal effect of the note, under the facts stated in it. And the instruction certainly gives the proper legal effect to the note, under *Milling Co.* v. *Watkins,* 41 W. Va. 787, (24 S. E. 612).   As to the point that it did not advert to the facts or evidence tending to show the effect of indulgence or release of a lien, if the instruction were what is called a "binding instruction,"—that is, one which, after stating certain facts, tells the jury that, if those facts exist, the jury must find in a certain way,—and there are other material facts involved in the evidence ignored by it, then this

instruction would be open to the objection made against it; but it does not do this, as it simply tells the jury the legal effect of a note, under the facts stated in the instruction, as one of the elements of the case. A party has a right to have the opinion of the court as to the law upon a given state of facts, though they do not cover the whole ground of the case, and he has the right to have an instruction in his own language, if clear, intelligible, and properly propounding the law. If the defendants wanted an instruction as to the effect of indulgence or surrender of lien,—matters entirely separate from the legal effect of the note,—they should have asked it. Judgment affirmed.

*Affirmed.*