## Herndon vs. Higgs, ad.

Under the statute of assignments, the maker of a note or obligation, being sued by an assignee, and having notice that one or more of the assignments are forged, ought, for his own justification, and the protection of the rights of the real owner, to interpose the defence.

But his position may be a hazardous one, and the defence at law not being complete, or adequate, he may elect to submit to judgment, and obtain relief in equity, by bringing all the parties in interest before the court.

And in such case, if the obligor has in good faith paid the debt to an intermediate assignor or holder of the instrument, he may pray for and obtain alternative relief, that the amount so paid be refunded to him in case it was wrongfully claimed and received by the person to whom he paid it.

After dissolution of an injunction, the complainant has the right to proceed with his suit to final hearing; and, upon a motion to dissolve, it is a gross irregularity for the court to render a final decree against the complainant, granting affirmative relief to a defendant who has filed no cross bill in the cause.

*Appeal from Lafayette Circuit Court in Chancery.*

Hon. Shelton Watson, Circuit Judge, presiding.

Pike & Cummins, for appellant. After a cause is set for hearing and before a hearing, a party cannot by motion dismiss a bill for want of equity, because there may be a remedy at law. 14 *Ark.* 353.

• Nothing but the facts on face of the bill can be considered here, and these facts show jurisdiction. 1 *Sto. Eq.*, sec. 28, 33, 65, 71.

Carleton, for appellee.

Mr. Chief Justice Watkins delivered the opinion of the Court.

The bill of complaint exhibited by the appellant, sets forth a case of this description: That being indebted to one Hardy High-

tower, he had executed his obligation for the same payable to him; and in order to secure the payment of it, had made his deed of trust, to John O. Hightower, of certain slaves and land in Lafayette county, to which John O. and Hardy were parties, containing various stipulations, and the trustee, John O., was authorized to sell the property upon the contingency, and in the manner prescribed, and apply the proceeds of the sale, first, to " extinguish the debt in question." That the writing obligatory, along with the deed of trust, had been left in the custody of John O. Hightower, the trustee; and he afterwards dying, it was found among his papers, purporting to be endorsed in blank by the payee, H. Hightower, and also by one James B. Hightower. That the endorsement of Hardy Hightower was a forgery, and the writing obligatory in truth belonged to him. That the defendant, Higgs, as administrator of John O. Hightower, claiming title under the successive assignments from Hardy to James B., and from James B. to the intestate, had brought an action at law upon it against the complainant, who pleaded thereto denying the assignment from Hardy Hightower, and the action was dismissed. That the complainant had paid and satisfied the amount of the obligation to Hardy Hightower, and taken a receipt from him which was produced. That the defendant, Higgs, had brought another action at law upon the writing obligatory, in the name of Hardy Hightower for his use, as administrator of John O., which suit was pending. The administrators of John O. and Hardy Hightower, were made defendants to the bill; upon the latter of whom process was not served, and no subsequent steps, by order of publication or otherwise, appear to have been taken against him. The bill prayed for an injunction to restrain the administrator from prosecuting the action at law, and in the alternative for a decree, making the injunction perpetual, and requiring the writing obligatory to be given up and cancelled, or if the complainant should be adjudged liable to pay the amount due upon it to the administrator of John O., then a decree that Hardy Hightower refund the amount, wrongfully received by him, to the com-

plainant; and for discovery and general relief. An injunction was granted in accordance with the prayer of the bill. Higgs, the administrator of John O., answered, to the effect, that, according to his information and and belief, the endorsement of Hardy Hightower was genuine, and for a good or valuable consideration to James B., and he had assigned the same to John O., in part payment of a quantity of land and some negroes bought of him, so that the writing obligatory came to be the individual property of his intestate, John O. That John O. and James B. were brothers, being the sons of the defendant Hardy Hightower. That James B. was the first administrator of John O., and inventoried the writing obligatory in question, as part of the assets of his estate, and defendant avers that complainant made a partial payment upon it, and took receipts of the administrator for the amount so paid. That James B. dying, the defendant was appointed administrator *de bonis non* of John O., and the writing obligatory came to his hand in that capacity. He denies the alleged payment by the complainant to Hardy Hightower, and avers that such payment, if any, was made by giving a new note or obligation for the money, which remains unpaid; that the transaction between them was colorable merely, and collusive, with intent to defraud the creditors of John O., by withdrawing, from his estate, a large amount of assets; which would otherwise be appropriated to the payment of their claims; and, by way of reserving the benefit of a general demurrer to the bill, insisted that the complainant had an adequate remedy at law.

To this answer, replication was entered, and the cause was set down for final hearing, with leave to either party to take depositions. At the succeeding term, the defendant, Higgs, moved to dissolve the injunction, because the bill disclosed no equity, and the complainant might have had a remedy at law. He also moved for a final decree in his favor, upon a suggestion, verified by affidavit and admitted to be true, that the complainant had, in the meantime, removed his property beyond the jurisdiction of the court, leaving no effects out of which the amount due upon the

writing obligatory could be made on execution, and no security for it except that upon the injunction bond. The Circuit Court sustained the motion, and proceeded to render a final decree, in the cause, dissolving the injunction with damages for delay, and decreeing that the complainant pay to the defendant, as administrator of John O. Hightower, the amount of principal and interest ascertained by computation to be due upon the writing obligatory in question.

The proceedings disclosed upon this record, have been remarkably irregular. On the face of the bill, no reason is perceived why James B. Hightower was not a proper party defendant, and, on the coming in of the answer, it appeared that his representatives, if any, were necessary parties, and the complainant should have been required to amend the bill. An injunction should not have been granted in the first instance, if, at the time of filing the bill, an action was pending, unless the complainant would first submit to a judgment at law, upon which the injunction would operate as a release of errors; so that, upon dissolution, the defendant could be remitted to his execution at law. Although if the successive assignees took a beneficial interest in the assigned instrument, it is difficult, since the decisions following *Block vs. Walker*, (2 *Ark.* 4,) to understand how the administrator could sue again in the name of the payee for his use, disregarding the assignments, and the defendant at law might have defeated that particular action, yet, if he choose to resort to equity, to have the rights of all the parties finally settled, the case was clearly one where it would be the proper practice to let the plaintiff at law proceed to judgment. (*Conway vs. Ellison*, 14 *Ark.* 367.) Without some showing of accident or other excuse, which might authorize the court, in the exercise of its discretion, to extend the time, the motion to dissolve the injunction should regularly have been made at the coming in of the answer on or before the second day of the return term. (*Digest, title Injunctions, sec.* 23.) And though irregularly made, it could only have operated upon the injunction, because it was the right of the complainant to have the

cause progress to final hearing with or without an injunction. Without a cross bill, the defendant could not have obtained any affirmative relief, by decree against the complainant, for the payment of the debt in controversy. The cause appears to have been brought on for hearing upon the distinct ground, that the bill disclosed no equity, and also that the complainant had removed his effects. The cause having been regularly set for hearing, that proceeding was a surprise upon the complainant, unless desiring to adduce evidence at the hearing he was in default for not having procured depositions. Nor does it appear that the bill was dismissed because of the delay of the complainant in taking the proper steps to bring the other defendant, Hardy Hightower, before the court; otherwise, he had a right to an answer from that defendant, or to a decree by confession against him for indemnity, if, upon the final hearing, the court should be of opinion that the money rightfully belonged to the administrator, and also of opinion that the complainant had paid it in good faith, and, as he believed, to the real owner of the writing obligatory.

In the most favorable aspect of the case for the appellee, that is, upon the question of jurisdiction, the court below should have proceeded to adjudicate the cause. Supposing it stood upon bill, answer and replication, the denials in the answer were upon information, and the averment according to belief, except so far as the defendant may have had a knowledge of the fact of a partial payment to the preceding administrator. Being tested by the allegations contained in the bill, it would be substantially a case cognizable in equity. True, the defendant might have successfully resisted an action at law, upon plea under oath, denying the assignment. But chancery would also have jurisdiction, if the remedy at law was doubtful, inadequate, or hazardous; and the right to resort to chancery was not waived by any attempt to defend the second suit at law. In the construction of the statute concerning assignments, see *Dickinson vs. Burr*, decided at the present term, this court has held that the obligor or maker of assignable paper, being notified that one or more of the assign-

50BB

ments, through which a plaintiff deduces his title to the instrument, are forged, ought, for his own justification, and protection of the rights of the real owner, to resist payment of it, and interpose the defence; and this he may elect to do by plea at law. But it is obvious that his position, defending at law, may be a hazardous one, unless he defends upon indemnity from the real owner, who is not a party to the record, or bound by the decision. If the debtor voluntarily makes payment to either claimant, he may be said to take upon himself the responsibility of the act. But the case can be considered as though the complainant was resisting the demand of the holder, without having made payment to a third person claiming the debt; though the fact of such payment might, as we have seen, if made in error and in good faith, entitle the debtor to recover against such person wrongfully obtaining the money. The case had become complicated by the alleged fraudulent dealings of a trustee or agent, creating adverse interests between different parties, which could only be settled in one litigation, by bringing all of them before a court of equity. It is not intended to intimate any opinion upon the facts or merits of the case. It will remain for the chancellor to decide, upon the evidences, which may be adduced before him, which of the parties has been guilty of the gross fraud by each one imputed to the other.

The decree appealed from, will be reversed, and the cause, under all its peculiar circumstances, remanded, with the following directions: That the complainant submit to a judgment at law; that he amend his bill so as to bring the representatives of James B. Hightower before the court, or show some excuse for not doing it; that he take steps to obtain service of process, or notice by publication, against Hardy Hightower, and to compel an answer from him, or subject him to a decree; or, in default thereof, that the bill be dismissed; that the injunction be continued until the dismissal or final hearing; and the security afforded by the injunction bond retained as a guaranty for the diligent prosecution of his suit by the complainant; and that the cause, in other respects, progress regularly to final hearing.